Monell, J.
The object of this action, as I understand it, is to obtain the aid of the equitable powers of this Court, to remove alleged obstructions which the defendants, by their acts, have interposed to the effect and operation qf the attachments issued in the actions at law. Beyond this, the general scope of the suit is the same, as in the suit of Scheldt against the same defendants. Both the suits are brought by holders of Bennie’s drafts accepted by Sturgis, Shaw & Co., seeking to secure the application of the consigned property to the payment of those drafts and to prevent its seizure by the creditors at large of Sturgis, Shaw & Co.
The alleged obstructions are, first, the appointment of a Beceiver in the Scheldt suit; and second, the certificate given by S., S. & Co., to the Sheriff, upon receiving a copy of the attachments.
There are allegations of fraud and of fraudulent practices on the part of S„ S. & .Co. towards the plaintiffs, in respect to obtaining renewals of some of the drafts, and in attempts to effect a compromise with the holders of the Bennie drafts. But the evidence has failed to sustain any of these allegations. Indeed, I feel justified in saying that I am fully satisfied that S., S. & Co. have, so far as the evidence shows, dealt fairly, justly and honestly with the plaintiffs, and have not sought to deprive them of any of their rights, or to defeat any of their lawful suits. The compromise which they desired to effect with the holders of the Bennie drafts was honorable and just. It recognized the trust fund and sought to apply it equally to those who in equity were entitled to it. It was within the power qf S., S. & Co. to have deprived the plaintiff, and other holders of thé Bennie drafts, of this property, by a sale or assignment for the benefit of creditors. But they desired to prevent their general creditors from partaking *663 of it, and to devote it to creditors who had an equitable lien upon it.
It is claimed that the suit brought by Scheldt and the appointment of a Receiver therein was collusive between the parties; was a fraud upon the rights of the plaintiffs, and was instituted for the purpose of defeating the lien of the plaintiffs’ attachments. So far as there is any question of fact involved in these allegations, I have not had any difficulty in finding against the plaintiffs. I entertain no doubt that the object of the suit Was to carry out compulsorily what S., S. & Co. had failed to obtain through their compromise paper ; and to distribute, by the judgment of the Court, the consigned property to and among the holders of the Rennie drafts. It is quite immaterial that this suit was instigated by S., S. & Co. The evidence as to that is slight and perhaps not sufficient to justify such conclusion. They could have interpleaded between their creditors, the holders of the Rennie drafts, and their general creditors, in respect to this property; and I see no reason why they could not have made a special assignment of the trust property to pay the Rennie creditors. If so, then why not institute an action in the name of one of these creditors to obtain the same end? As has been already said, the relief demanded by the plaintiffs in this action, and that sought in the Scheldt suit is the same; and except so far as the plaintiffs may have acquired some preference or priority through their attachments, they could have obtained all they otherwise ask for, by coming in and becoming a party to the Scheldt suit.
In this view, I am of opinion that the institution of the Scheldt suit, and the appointment of a Receiver therein of the consigned property and mortgage, furnished no reason for the interference of a Court of equity, and does not, per se, defeat or deprive the plaintiffs of any lien or right acquired by force of their attachments.
The main question thereforé is, did the plaintiffs, by their attachments and the levy thereof, and the certificate given to the Sheriff by S., S. & Co., acquire any lien upon, *664 or preference or priority of payment out of the consigned goods and mortgage, which enables the plaintiffs to demand the judgment of this Court in aid of his judgments and executions at law ?
The goods consigned, and the mortgage executed, by Bennie to Sturgis, Shaw & Co., were held as security for advances made, and for the payment of any ultimate debt from Bennie to them. This, therefore, was a bailment, and not a purchase. The bailees, in this case, had a lien upon the consigned goods and mortgage', to the extent of any indebtedness of Bennie to them. It was somewhat urged at the trial, that the outstanding acceptances of S., S. & Co. did not constitute such a debt as would authorize them to retain these goods as against the creditors of Bennie. There is no force in this. So long as the liability of 5., S. & Co. continued to the holders of those acceptances, their right to and lien upon the consigned property remained.
At the time of the service of the attachments, the unpaid acceptances of S., S. & Co. amounted to about $230,000, and they had in their possession about $65,000 of consigned property, and a mortgage for $150,000, upon which they had borrowed $30,000.
The attachments were served on S., S. & Co., on the several days upon which they were issued, by leaving a copy with them certified by the Sheriff. Ho levy upon any property appears to have been made at that time, but a certificate, under section 236 of the Code, was demanded.
5., S. & Co., accordingly certified to the Sheriff, that they did not, at the time of the service of the attachment, nor at any time since, nor did they then hold any property in their possession, or under their control, for the benefit of Eobert Eennie, nor was there any debt owing by them to Eobert Eennie.
That S., S. & Co. were not mistaken in regard to the legal title to the property consigned by Eennie to them, cannot be pretended. They undoubtedly supposed, that having advanced to Eennie much beyond the value of the *665 goods, Ms interest in them had ceased. Such, practically, was the effect, but until the goods were disposed of by S., S. & Co., the legal title to them remained in Rennie. S., S. & Co.had their lien; could sell at pleasure, and give a good title to the purchaser; but Rennie owned the goods, subject to the lien and right of his factors. Commission merchants as a class of factors, mating advances to nearly or quite the value of the goods, are treated as the owners. (Story on Agency, § 111.) They sell .in their own name, and deal with the property in every respect as if it were their own. Still they have but a special property in the goods, the general property remaining in the principal.
I think it is clear, therefore, that, at the time of the service of the attachment, S., S. & C.o. had property in their possession belonging to Rennie, upon which they, as factors, had a subsisting lien to its full value; rendering the interest of Rennie in it of no value whatever. For the reasons stated, the certificates given by S., S. & Co. to the Sheriff were literally and technically untrue; but I cannot find from any of the proof in the case that they were given with any fraudulent or dishonest design, or with intent to hinder, delay or obstruct the plaintiffs in the pursuit of their remedies under their attachments. The technical falsity of these certificates, without a knowledge of the value of the consigned property, and the extent of the factors’ lien, may have well induced the suspicion that there might have been some fraudulent motive. But the fact is now thoroughly established that the advances far exceeded the value of the goods, and that the interest of Rennie was, in reality, nothing whatever. If S., S. & Co. had certified that they had in their possession goods of Rennie of the value of $65,000, upon which they had a lien for $230,000, they would have complied strictly with the law; but no one can say that the plaintiffs would have gained any consolation from such a certificate. I am warranted, I think, in saying that the certificate which they did give was not given through *666 any corrupt design or intent to injure the plaintiffs, but through a mistaken notion of their interest in the goods.
It is claimed, however, by the plaintiffs, and herein lies the strength of their action, that the giving of this technically untrue certificate was a waiver by S., S. & Oo. of their lien, as factors, upon the goods. If this were so, it might be that the lien of the attachments would be prior and superior to the title acquired' by the Receiver, and a Court of equity might enforce such priority in aid of judgments and executions at law. But it is clear, I think, that such would not be the effect of it. The learned Chief Justice, when this case was before the General Term, upon an appeal from an order denying a motion for a Receiver, said: “It is not easy to see how the giving of that certificate can affect rights which had previously accrued to third persons who had no agency or participation in that act.” And I understand it to have been conceded at the trial, that the creditors holding the acceptances of S., S. <& Co., constituting their lien, had an equitable right to the consigned property. I assume this to be so, and for the purposes of this action, it is a complete answer to the plaintiffs’ demand for relief. Such equitable right could not be divested by any act of S., S. & Co., which, as between them and their general creditors, might operate as a waiver of their lien.
But assuming this not to be so, have S., S. & Co., in effect, waived or lost their lien by giving to the Sheriff a certificate that they had not any property in their possession belonging to Robert Rennie ?
I know of no elementary law or adjudicated case in which such an act has been declared or held to be a waiver of the factors’ lien. The most that can be said is, that the denial of S., S. & Oo. that they had any property of Rennie, might operate as an estoppel on them. The elementary treatises and cases to which I am referred by the plaintiffs’ counsel, merely establish the general principle that a claim by a factor inconsistent with his actual right, may work a waiver of his lien. I do not regard the certifi *667 cate given to the Sheriff as setting up any claim to the goods, incompatible with the right of S., S. & Co. They say they hold no property “for the benefit of Bennie.” This in one sense was true. They held the property for the benefit of Bennie’s creditors, who had an equitable right to its application to the acceptances held by them.
In the absence of all fraudulent design; they having a not unnatural misconception of the nature of their rights and interest in the property, and a desire to have it distributed among the holders of the Bennie drafts, I cannot attach so grave importance to an act harmless in itself, as to give it the effect of a waiver of their lien.
The section of the Code which provides for the giving of a certificate, (§ 236,) also provides, that if the individual “refuse to do so, he may be required by the Court or Judge to attend before him and be examined, on oath, concerning the same;” and it has been held, that where a party served with an attachment certifies he has no property, it may be regarded as a refusal to give the certificate, if it can be satisfactorily established that the certificate is untrue. (Carroll v. Finley, 26 Barb., 61.) This remedy could have been pursued by the plaintiffs, and the nature of 8., S. & Co.’s interest in the consigned property ascertained in a much more summary and economical mode than the one they have adopted in this action.
Upon a careful examination of all the questions raised by counsel, with the aid of the evidence in the case, I cannot bring my mind to any result favorable to the plaintiffs. S., S. & Co. do not seem to me to have lost their lien, and the right of the receiver to hold the property as against the plaintiffs in this action is unaffected.
As this view-disposes of all the equity of the plaintiffs’ complaint, the defendants must have judgment dismissing the complaint with costs.